**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**UNITED STATES OF AMERICA,**                    Criminal No. 05-329 (MJD/JJG)

        Plaintiff,

    v.                                                          **REPORT AND**
                                                                             **RECOMMENDATION**
**JUSTIN WAYNE PETERSON,**

        Defendant.

---

APPEARANCES

Joe Dixon, Assistant United States Attorney, for Plaintiff United States of America

Robert Christensen, Esq., for Defendant Justin Wayne Peterson, also present

---

JEANNE J. GRAHAM, United States Magistrate Judge

        The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on November 30, 2005, on the pretrial motions of both the Government and Defendant Justin Wayne Peterson. This matter is scheduled to be tried before the Honorable Michael J. Davis, United States District Court for the District of Minnesota, on January 23, 2006. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I.**    **INTRODUCTION**

        On October 11, 2005, an indictment was filed against Defendant Justin Wayne Peterson charging him with one count of illegal possession of a machine gun for knowingly

1

possessing a Vector Arms, model V-53, serial number V0094, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

At the pretrial motions hearing, Detective Robert J. Seidenkranz (Det. Seidenkranz) of the Maple Grove Police Department testified for the Government and four exhibits were admitted into evidence: Government Exhibit 1 - 4/19/05 search warrant, application and supporting affidavit for 6755 Evergreen Lane, Maple Grove, Minnesota, and inventory of items seized; Government Exhibit 2 - Transcript of 4/19/05 recording of interview by Det. Seidenkranz of Defendant Justin Wayne Peterson (Peterson); Government Exhibit 3 - copies of two photographs of a female identified only as "EJT" holding a firearm; and Government Exhibit 4 - 4/19/05 cassette tape recording of the interview by Det. Seidenkranz. Peterson testified on his own behalf at the hearing.

Both the Defendant and the Government have submitted post-hearing briefs in a timely manner. The Court has addressed the parties' non-dispositive motions in a separate Order. Defendant's dispositive motions are now addressed in this Report and Recommendation.

## II. RELEVANT FACTUAL BACKGROUND

In April 2005, Det. Seidenkranz began an investigation of Peterson regarding allegations of criminal sexual conduct relating to Peterson's relationship with a minor female ( "EJT"). During the course of the investigation, Det. Seidenkranz interviewed EJT and learned that the defendant made threatening statements to EJT about shooting people if the police were informed of their relationship. EJT also informed the detective that Peterson was in possession of guns, which he kept at his home. Det. Seidenkranz determined that these

2

threats were taken seriously by EJT and that the defendant possessed the means to carry out the threats should he decide to do so.

On April 19, 2005, Det. Seidenkranz obtained a search warrant for the defendant's residence, person and vehicles authorizing the police to search for items related to the alleged criminal sexual conduct. Based upon the statements of EJT concerning the threats made by Peterson and his access to firearms, the search warrant also authorized the seizure of firearms "for safekeeping ... due to the threat of violence to E.J.T. or her family by Peterson." After obtaining the search warrant, but prior to its execution, Peterson was arrested on charges of criminal sexual conduct and was brought to the Maple Grove Police Station for booking. Defendant Peterson was interviewed by Det. Seidenkranz while at the police station.

After Det. Seidenkranz read to Peterson the necessary *Miranda* warnings, Peterson knowingly waived his rights and answered questions regarding the circumstances surrounding his relationship with EJT. Peterson admitted that he made threatening statements to EJT that he would "shoot people" if the police were to get involved, but also told the detective that he was "kidding" when he made those statements. Peterson told the detective that a short time after making the threatening statements he told EJT that he did not really intend to shoot anyone. Peterson told the detective that he thought EJT "was probably freaked out" and that he repeatedly told her he would not shoot anyone.

Following the interview, officers executed the search warrant at Peterson's residence, who lived with his parents. During the search of the defendant's bedroom, police seized several firearms, including a gun case that was later opened by officers who determined that

the firearm inside the case was an illegal machine gun.

Det. Seidenkranz next spoke with Peterson on April 21, 2005, at the Hennepin County Jail where Peterson was then being detained regarding the criminal sexual conduct charges. This time after hearing the *Miranda* warnings again, Peterson indicated that he did not wish to speak to the detective stating "I am not supposed to." Det. Seidenkranz then concluded his conversation with Peterson without asking further questions.

On April 25, 2005, Det. Seidenkranz placed a telephone call to Peterson's home with the intention of speaking to his father about the seized firearms and illegal machine gun. Peterson had not been charged with any firearms violations as of this date. The detective learned during the course of the telephone call that Peterson was home after being released from the county jail. Det. Seidenkranz asked the father if he could speak with Peterson on the phone, to which Peterson agreed.

The detective did not repeat any *Miranda* warnings to the defendant during this phone conversation. Peterson never stated that he had an attorney representing him on the state criminal sexual conduct charges. Peterson never stated that he did not want to speak to the detective about the guns. Det. Seidenkranz did not threaten the defendant or make any promises. According to the detective, the defendant was responsive to his questions during the telephone call. Det. Seidenkranz testified that his telephone call to Peterson home on April 25th lasted for approximately thirty minutes total, and that the conversation was recorded.

III.   **DISCUSSION**

Defendant Peterson brings five separate dispositive motions seeking suppression of

his arrest and various evidence seized and statements made, as well as a dismissal of the indictment on the grounds of insufficient allegations.  The focus of the briefs is a claim of a lack of probable cause, although the Court will address the other motions as well.

A.   Motion to Quash Arrest and Suppress Evidence Illegally Seized For Lack of Probable Cause

Peterson argues that there was insufficient probable cause for his arrest and the firearms seized pursuant to the search warrant.  He seeks suppression of his arrest arguing that the entire record does not support a finding of probable cause to believe that an offense had been committed and that the defendant had committed it.  The defendant seeks an order suppressing any and all evidence seized as a result of any search immediately following his arrest and any and all "fruits" thereof.

The court disagrees.  Probable cause is established when officers have knowledge, at the time the arrest was made, of facts and circumstances warranting a reasonable belief that the suspect had committed a crime.  United States v. Tovar-Valdivia, 193 F.3d 1025, 1028 (8th Cir. 1999).

In this case, Peterson was initially arrested on State charges of criminal sexual conduct.  More specifically, it was alleged that Peterson engaged in sexual acts with a 15-year-old girl.  Given his age of 24, this is a crime under state statutes, regardless of consent of the minor. Minn.Stat. § 609.344. Det. Seidenkranz testified that the facts constituting probable cause for Peterson's arrest were the same as those found in the search warrant.

Of course, the case before this court arises from a grand jury indictment on federal firearms charges and, thus, a probable cause determination has already been made. U.S. v.

5

Sells Eng'g, Inc., 463 U.S. 418,423 (1983).  But to the extent there remains any question regarding his initial arrest before his interview, a brief recitation of the facts as set forth in the search warrant affidavit clearly shows the existence of probable cause.

At the time of the arrest, the police knew that Peterson met the alleged victim through a website and they started communicating via E-mails. They struck up a relationship soon thereafter and they engaged in sexual acts together. Once the minor's parents found out about the relationship, they put an end to it.  The allegations are that Peterson got angry and made a threat to shoot someone if the police got involved.  The minor informed the police that Peterson owned several firearms.

Accordingly, taking the totality of circumstances into consideration, the police had probable cause to believe Peterson had committed a crime. Whether or not the crime of terroristic threats can be proved beyond a reasonable doubt is not the issue. He was arrested on the basis of engaging in sexual acts with a girl too young to give her consent. Based upon these facts, the officers had a reasonable belief he committed a crime.

The Court recommends that this motion be denied.

B. Motion to Suppress Evidence Seized Pursuant to Search Warrant

Similarly, Peterson seeks suppression of evidence obtained during the April 19, 2005, search of his residence on the grounds that the affidavit supporting the application for the warrant lacked probable cause and was defective at the time the warrant was executed. Specifically, Peterson contends that the information he gave to Det. Seidenkranz that he was "kidding" and did not intend to shoot anyone learned after the issuance of the warrant but prior to its execution, made it unreasonable for law enforcement to continue to believe probable

cause existed.  It is argued that based upon this new information Det. Seidenkranz had an obligation to report back to the signing judge to update his supporting affidavit before acting on the issued warrant.

First, the Government is correct in stating that Peterson's reliance on <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), is misplaced under the circumstances in this case.  <u>Franks</u> applies only when Peterson can "make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit ..."  438 U.S. 155-166.  In this case, Peterson complains primarily of defects in the affidavit relating to information learned by the affiant subsequent to the issuance of the search warrant by the judge. While there is case law supporting the application of *Franks* to situations where a law enforcement officer has omitted material statements from a supporting affidavit at the time the warrant is requested, Peterson fails to identify any legal authority providing for the application of <u>Franks</u> to this sequence of events.

Second, a warrant must be supported by probable cause to conduct a search or to seize evidence of a crime. U.S. Const. Amend IV.  The Fourth Amendment requires that a neutral and detached magistrate determine whether law enforcement officers have probable cause to conduct a search.  <u>Warden v. Hayden</u>, 387 U.S. 294, 301-302 (1967); <u>United States v. James</u>, 353 F.3d 606, 613 (8th Cir. 2003).  Probable cause exists when there are sufficient facts to justify a prudent person's belief "that contraband or evidence of a crime will be found in a particular place."  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>United States v. Kennedy</u>, 427 F.3d 1136, 1141 (8th Cir. 2005).

Facts in a supporting affidavit must provide the issuing judge with a "substantial basis" to believe that a "fair probability" exists of finding evidence of a crime. Gates, 462 U.S. at 238-39. When a judge relies solely on an affidavit to issue a warrant, the judge may consider only information within the "four corners" of the affidavit. United States v. Wells, 347, F.3d 280, 286 (8th Cir. 2003). Courts reviewing a decision to issue a search warrant give great deference to the decision to issue the warrant and "due weight to inferences drawn" by issuing judges and local law enforcement. Ornelas v. United States, 517 U.S. 690, 699 (1996).

In this case, Peterson's claim that Det. Seidenkranz recklessly failed to update his affidavit with new information that negated probable cause for seizing Peterson's firearms is unsupported by any legal authority, and inconsistent with the testimony of both Det. Seidenkranz and Peterson. Det. Seidenkranz testified that EJT told him that Peterson not only engaged in sexual acts with her, but made threatening statements about "shooting people" if her parents or the police found out about their relationship. EJT also had personal knowledge that Peterson was in possession of guns that he kept at his residence. Det. Seidenkranz testified that he believed EJT was afraid for her safety and the safety of her family because of the threats made by Peterson.

Under Minnesota law, whether a given statement is a threat turns on whether the "communication in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." State v. Schweppe, 237 N.W.2d 609, 613 (Minn. 1975) (citing United States v. Bozeman, 495 F.2d 508, 510 (5th Cir. 1974).

Here, Peterson's claim during the interview that he was kidding when he made the threatening statements to EJT and that he had told EJT he was kidding shortly after he had

made the statements, does not negate the fact that the threats were indeed made. Peterson admitted that EJT "might not have understood" that he was kidding when he said he would shoot people, because she didn't know him that well.  Peterson also showed the illegal machine gun to EJT during a visit by EJT to Peterson's home.

From these circumstances, it is reasonable to believe that Det. Seidenkranz did not change his belief that EJT and her family were potentially in danger due to Peterson's threats and his apparent ability to act upon them if he decided to do so.  Peterson's subsequent statements to the detective that he was "kidding" when he made the threats to EJT does not negate the detective's belief of danger that formed the basis for the probable cause for the seizure of Peterson's firearms.

Moreover, the Court has reviewed the supporting affidavit and finds that the statements relating to Peterson's threatening statements about shooting people, and EJT's indication that Peterson owns "an AK-47 type assault weapon and possibly other guns" are sufficient to find probable cause for the seizure of firearms from Peterson's residence as part of the search warrant issued in relation to the investigation of criminal sexual conduct.  Peterson's subsequent minimization of his threat does not render the warrant defective.

Third, even if the Court were to determine the supporting affidavit did not support probable cause, a finding it has not made, the Court finds the good faith exception to the warrant requirement applies, because the officers executing the warrant acted in good faith reliance on the warrant. See United States v. Leon, 486 U.S. 897, 922-23 (1984).  The Court has determined that the affidavit did not contain deliberately or recklessly false information. See id. at 923.  There is no evidence that the issuing judge failed to act in a neutral or

9

detached manner.  See id.  The affidavit was not so lacking in probable cause that reliance

on it by the officers was entirely unreasonable.  See id.  Finally, the warrant was not so facially

deficient that the officers unreasonably presumed it to be valid.  See id.

For all of the above reasons, the court recommends that Defendant Peterson's motion

be denied.

C. Motion to Suppress Evidence Derived From Electronic Surveillance

Peterson seeks suppression derived from any electronic surveillance during any

investigation of Peterson.  The Government stated at the November 30th hearing that wire taps

were not utilized in the investigation of Peterson and there is, therefore, no evidence to

produce or suppress.  Accordingly, the Court recommends that this motion be denied as

moot.

D. Motion to Suppress Confessions or Statements in the Nature of Confessions

Peterson next ask the Court to order suppression of any confessions or statements in

the nature of confessions, or any evidence derived from or discovered as a result of any

confessions obtained from Peterson on April 19, 2005, and April 25, 2005.

1.   April 19, 2005 Statements During Custodial Interview

Peterson claims any admissions, statements or answers he gave to Det. Seidenkranz

during the April 19, 2005, interview at the Maple Grove police station following his arrest and

booking were given without a knowing and voluntary waiver of the *Miranda* warnings in

violation of his Fifth Amendment rights. The Fifth Amendment prohibits the use of self-

incriminating statements obtained during custodial interrogation, unless there is a voluntary,

10

knowing and intelligent waiver of the defendant's *Miranda* rights. <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Det. Seidenkranz provided credible testimony at the hearing regarding his interview of Peterson. Upon his arrest for the State charges, Peterson was taken to the Maple Grove Police Department and booked. He was brought to the interview room where only he and the detective sat. The room was of sufficient size and he was not restrained. The detective made no promises, no threats and did not apply physical force to exact Peterson's admissions.[1] Peterson was cooperative, responsive and never asked for the interview to stop or for an attorney.

With regard to the administration of *Miranda* warnings to Peterson at the commencement of the interview, the detective first asked for basic biographical information. (<u>See</u> Gov't Exh. 2 at 2). He then told Peterson that since he was under arrest, the detective would read him his *Miranda* rights prior to talking to him about the reason for his arrest–criminal sexual conduct. <u>Id.</u> After reading all the required *Miranda* warnings, Peterson answered "yes" to both whether he understood his rights and whether he wanted to speak with the detective. <u>Id.</u>

_____

[1]Peterson testified that the detective told him just before going in to the room that if he cooperated it would be better for him because they were going to search his house. The detective denied the statement. The interview was recorded. There was no mention of the alleged statement and the court finds no other credible evidence of this statement being made. In fact, the last question the detective asked Peterson prior to ending the interview was "Okay. And have I, have I threatened you in any way or promised you anything?", to which Peterson answered "No." <u>See</u> Gov't Exh. 2 at 38. In any event, the statement would not rise to the level of a threat or promise. <u>See</u> <u>Simmons v. Bowersox</u>, 235 F.3d 1124 (8th Cir. 2001).

Moreover, this was not the first time Peterson had met law enforcement over the years. Even Peterson admitted that while he found the initial booking questions to be just "normal", he knew the situation was more serious than any other in which he had found himself.  At the time of the interview, Peterson was 24 years old, graduated from high school and was a supervisor at his job.  He  acknowledged receiving *Miranda* warnings from the detective and testified that he understood the meaning of the words "remain silent" and knew he could ask for an attorney.

Accordingly, there is ample evidence that Peterson was given appropriate notice of his rights pursuant to *Miranda* and that he voluntarily, knowingly and intelligently waived his rights before talking to the detective.  Thus, the undersigned recommends that Peterson's motion be denied with respect to the April 19, 2005 interview.

> 2.    *April 25, 2005: Telephone Conversation with Detective Seidenkranz*

Peterson also claims any admissions or statements he made during his April 25, 2005, telephone conversation with Det. Seidenkranz were given without a knowing and voluntary waiver of the *Miranda* warnings in violation of his Fifth Amendment rights and without his lawyer's presence or knowledge in violation of the Sixth Amendment.

Peterson claims he was not given *Miranda* warnings at any time during the April 25th telephone conversation with Det. Seidenkranz.  He further claims that the state charges and the federal firearms charges are "inextricably intertwined" and that his representation by counsel in the state charges covered the charges relating to the federal firearms charges. Accordingly, Peterson argues, he was represented by counsel at the time of the April 25th

telephone call with Det. Seidenkranz, but was questioned over the telephone without the assistance of his counsel.

The Court disagrees that Peterson's statements must be suppressed. First, a law enforcement officer is obligated to give *Miranda* warnings to a suspect only when the individual is in custody. <u>See</u> <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994). Peterson had been released from custody after his state court appearance and was at his home on April 25th. His contact with Det. Seidenkranz occurred only over the telephone. The detective made no promises or threats to Peterson during the phone conversation. Thus, Peterson was not in custody at the time of the telephone conversation and *Miranda* warnings were, therefore, not required.

Second, the right to counsel attaches once adversarial proceedings have begun and the government may not deliberately elicit incriminating statements from a defendant once the right attaches. <u>Brewer v. Williams</u>, 430 U.S. 387 (1977). However, the right to counsel under the Sixth Amendment is "offense specific." <u>See</u> <u>Texas v. Cobb,</u> 532 U.S. 162, 167 (2001); <u>United States v. Johnson</u>, 352 F.3d 339, 343-34 (8th Cir. 2003). It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, whether by way of formal charge, preliminary hearing, indictment, information or arraignment. <u>Cobb</u>, 532 F.3d at 167-68. Where no criminal charges have been filed on the subject of the interrogation, the Sixth Amendment analysis in not applicable to a suppression determination. <u>See</u> <u>Illinois v. Perkins</u>, 496 U.S. 292, 299 (1990).

It is undisputed that Peterson had not yet been charged with illegal possession of a firearm at the time he spoke to Det. Seidenkranz on the telephone on April 25, 2005. Thus,

Peterson's Sixth Amendment rights are only implicated if the contact by the detective was directly related to the pending charges against him.  The Supreme Court has noted that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 229, 304 (1932); see also Johnson, 352, F.3d at 343.

Det. Seidenkranz testified that his telephone contact with Peterson's father on April 25, 2005, was made for the purpose of discussing Peterson's firearms and not the pending state criminal sexual conduct charge.  Obviously, the state criminal sexual conduct charge or even a potential terroristic threat charge against Peterson requires proof of several facts which are not necessary to prove the federal illegal firearms charge.  They cannot, therefore, be considered the "same offense" in the context of the Sixth Amendment right to counsel.

On the one hand, the Court finds that Peterson was represented by counsel on the state criminal sexual conduct charges at the time of the April 25th telephone call from Det. Seidenkranz and it is not reasonable to believe that the detective was not aware of that fact. On the other hand, the dispute in this federal case is not about statements made as to the criminal sexual conduct charges. If so, those would likely be in violation of Peterson's Sixth Amendment rights.  The charges pending here and the subject of the conversation involved the firearms.  The Sixth Amendment rights relating to the federal firearms violations had not yet attached on that date.  Consequently, the Court finds suppression of Peterson's statements made during that telephone conversation unwarranted.

For these reasons, the Court recommends that Peterson's Motion to Suppress

14

Confessions or Statement in the Nature of Confessions should be denied.

      E. <u>Motion to Dismiss Indictment on Grounds of Insufficient Allegations</u>

      Finally, Peterson seeks an order from the Court dismissing the indictment stating "there was no competent evidence presented to the Grand Jury upon which this indictment is based; all of the purported testimony given in respect thereto was opinion evidence as to proof of the ultimate fact and not competent affirmative facts to sustain the indictment." Peterson provides no further factual elaboration or legal support for his contention of insufficiency.

      Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The indictment must "give the official or customary citation of the statute, rule, regulation, or other provision of law that Peterson is alleged to violated." <u>Id.</u>  An indictment that tracks the wording of the statute, and the language sets forth the essential elements of the crime such that it fairly informs a Peterson of the charge against which he must defend is generally sufficient. <u>Hamling v. United States</u>, 418 U.S. 87 (1974).

      In this case, the indictment states that Peterson knowingly possessed a certain machine gun in violation of a Title 18, United States Code. Section 922(o) and 924(a)(2).  The indictment specifically identifies the model, make and serial number of the machine gun Peterson is alleged to have illegally possessed.  The indictment is clear, concise and definitive in its recitation of the essential facts constituting the offenses charged. The Court, therefore, recommends that Peterson's Motion to Dismiss Indictment on Grounds of Insufficient Allegations be denied.

## IV.   CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Quash the Arrest and Evidence Seized for Lack of Probable Cause (Doc. #13 & 28) be **DENIED,**

2. Defendant's Motion to Suppress Evidence Seized Pursuant to a Search Warrant (Doc. #23 & 32) be **DENIED,**

3. Defendant's Motion to Suppress Electronic Surveillance (Doc. #18) be **DENIED AS MOOT**,

4. Defendant's Motion to Suppress Statements and Confessions (Doc. #21 & 31) be **DENIED,**

5. Defendant's Motion to Dismiss the Indictment (Doc. #22) be **DENIED.**

Dated: December 23, 2005                    s/Jeanne J. Graham

                                        _____
                                        JEANNE J. GRAHAM
                                        United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by January 13, 2006.  A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.